Edmund J. KRAWCZYK, Special Trustee of the Wanderer's Rest Interment Society Perpetual Care Trust Fund, Plaintiff-Appellant,††

v.

BANK OF SUN PRAIRIE, William J. Livingston and Virginia Surety Co., Inc., Individually, Corporately, or as the Assignees of Wanderer's Rest Cemetery, Inc., Glenview Service Corporation and Raymond Turner, Defendants-Third-Party Plaintiffs-Respondents,†

J. David KREKELER, Collins, Beatty & Krekeler, S.C., Third-Party Defendant,

A. G. EDWARDS & SONS, INC., Third-Party Defendant-Co-Appellant,

NATIONAL UNION FIRE INSURANCE COMPANY of Pittsburgh, Third-Party Defendant,

GLENVIEW MEMORIAL GARDENS, a Wisconsin Cemetery Association, Plaintiff-Appellant,

v.

BANK OF SUN PRAIRIE, William J. Livingston and Virginia Surety Co., Inc., Defendants-Third-Party Plaintiffs-Respondents.†

††Petition to cross review filed.
†Petition to review filed.

556

Edmund J. KRAWCZYK, Special Trustee of the Wanderer's Rest Interment Society Perpetual Care Trust Fund, Plaintiff,

v.

BANK OF SUN PRAIRIE, Defendant-Third-Party Plaintiff,

William J. LIVINGSTON and Virginia Surety Co., Inc., Individually, Corporately, or as the Assignees of Wanderer's Rest Cemetery, Inc., Glenview Service Corporation and Raymond Turner, Defendants-Third-Party Plaintiffs-Respondents,†

v.

J. David KREKELER, Collins, Beatty & Krekeler, S.C., A. G. Edwards & Sons, Inc., and National Union Fire Insurance Company of Pittsburgh, Third-Party Defendants,

The OHIO CASUALTY INSURANCE COMPANY, Appellant.

GLENVIEW MEMORIAL GARDENS, a Wisconsin Cemetery Association, Plaintiff,

v.

BANK OF SUN PRAIRIE, Defendant-Third-Party Plaintiff,

William J. LIVINGSTON and Virginia Surety Co., Inc., Defendants-Third-Party Plaintiffs-Respondents,†

The OHIO CASUALTY INSURANCE COMPANY, Appellant.

Court of Appeals

†Petition to review filed.

557

*Nos. 95–0249, 95–1298. Submitted on briefs January 17, 1996.—Decided July 25, 1996.*

(Also reported in 553 N.W.2d 299.)

For the plaintiffs-appellants and appellant the cause was submitted on the briefs of *Bruce Gillman* of *Tomlinson, Gillman & Rikkers, S.C.* of Madison, and *Frederick E. Reindenbach* of *Wesolowski, Reidenback & Romell* of Franklin.

For the third-party defendant-co-appellant A.G. Edwards & Sons, Inc., the cause was submitted on the briefs of *Daniel W.Stolper* of *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

For the defendants-third-party plaintiffs-respondents William J. Livingston and Virginia Surety Company, Inc., the cause was submitted on the brief of *James R.Cole* and *James M. Brennan* of *Quarles & Brady of Madison*, *David J. Harth* of *Foley & Lardner* of Madison, and *Paul F. Matousek* of *Lord, Bissell & Brook* of Chicago, Illinois.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J.    Plaintiffs Edmund J. Krawczyk, as special trustee of a cemetery trust fund, and Glenview Memorial Gardens appeal from an order dismissing their claims against William Livingston and his insurer. A.G. Edwards & Sons, a third-party defendant, appeals from the same order. Ohio Casualty appeals from an order denying its motion to substitute for plaintiffs and Livingston's employer, the Bank of Sun Prairie, in their claims against Livingston. We consolidated the appeals.

559

We deem the questions to be: (1) whether third persons can state a claim against a bank officer for their economic loss caused by the officer's negligence; and (2) whether an insurer which had issued a "blanket bond" to the bank covering the bank's loss from theft and had settled with the bank is entitled to be substituted for the bank in an action against the officer. We answer the first question, No, and the second question, Yes, and therefore affirm the dismissal order and reverse the order denying substitution.

## I. PROCEDURAL BACKGROUND

The Bank of Sun Prairie was the trustee of trusts established to maintain Wanderer's Rest Cemetery in Milwaukee and Glenview Memorial Gardens cemetery in Ixonia. Livingston, a vice-president and trust officer of the bank, administered the trusts. Plaintiff Krawczyk, as special trustee of the Wanderer's Rest trust fund, and plaintiff Glenview sued the bank and Livingston and the bank's directors and officers liability insurer, Virginia Surety Company. Plaintiffs alleged that the bank and Livingston had negligently and in breach of their fiduciary duty transferred the trust funds to unauthorized entities, one of whom was A.G. Edwards, a securities firm. Those entities disbursed the funds to persons who misappropriated them. The bank, Livingston and Virginia Surety filed a third-party complaint against A.G. Edwards, and it counterclaimed against Livingston and Virginia Surety. The trial court dismissed plaintiffs' claims and A.G. Edwards' counterclaim. The plaintiffs and A.G. Edwards appeal.

Ohio Casualty had issued a fidelity and theft policy to the bank. Ohio Casualty settled the plaintiffs' claims against the bank for $437,000 and moved to

substitute itself for the plaintiffs Krawczyk and Glenview and for the bank in the underlying actions in order to pursue their claims against Livingston and Virginia Surety as their assignee. The trial court denied the motion to substitute, and Ohio Casualty appeals from that order. We consolidated the appeals.[1]

## II. FACTS

In 1986 an attorney representing Raymond Turner informed the bank[2] and Livingston that Turner had purchased the cemeteries and that nothing prevented the trust funds from being transferred to a trustee located outside Wisconsin. The attorney subsequently instructed the bank and Livingston to transfer the trust funds to Francis Baratto at Thomson-McKinnon Securities in New York. On April 11, 1986, Turner appeared and filed with the bank a notice removing the bank as trustee and a corporate resolution to appoint him as successor trustee.[3] The bank and Livingston, as

---

[1] For more factual background regarding litigation resulting from the same transfers by the bank, *see Krawczyk v. Bank of Sun Prairie*, 161 Wis. 2d 792, 468 N.W.2d 773 (Ct. App. 1991), and *Krawczyk v. Bank of Sun Prairie*, 174 Wis. 2d 1, 496 N.W.2d 218 (Ct. App. 1993).

[2] Respondents refer to the bank as the "alleged" trustee. The trial court ruled that issues remain for litigation:

> While an agreement exists between Wanderer's Rest and the Bank, whether the Bank was acting as trustee or custodian under an oral agreement to follow the written trust agreement between Wanderer's Rest and [another bank] is a disputed issue. The undisputed evidence indicates that the Bank acted as a trustee for the Glenview trust, however, the terms of agreement are for the finder of fact.

[3] Each trust agreement required a successor trustee to be a financial institution with its principal place of business in Wisconsin.

561

its trust officer, then began transferring the trust funds to Thomson. Francis Baratto, at Thomson, disbursed at least $150,000 to Turner and his colleague. The trust funds remaining in Thomson were transferred to A.G. Edwards after Baratto moved to that firm. By October 1986 Baratto had disbursed about $220,000 in trust funds from A.G. Edwards to Turner and his colleague, and they misappropriated the funds.

Plaintiffs Krawczyk, as special trustee, and Glenview brought the underlying actions, alleging the bank and Livingston had been negligent and had breached the bank's fiduciary duty to Wanderer's Rest and Glenview. The bank, Livingston and Virginia Surety filed a third-party plaintiffs' complaint against A.G. Edwards & Sons, Inc. and others as third-party defendants.[4] The court granted summary judgment to Livingston, concluding as a matter of law that his only duty was to his principal, the Bank of Sun Prairie.

Ohio Casualty then settled with the plaintiffs and the bank.[5] The settlement agreement provides that plaintiffs and the bank assign their claims against Livingston and Virginia Surety to Ohio Casualty and that Ohio Casualty is subrogated to the plaintiffs' and the bank's rights against Livingston and Virginia Surety

---

[4] The other third-party defendants are not involved in this appeal. We have not found a third-party complaint in Glenview's action.

[5] Ohio Casualty states in its brief:

> In deciding to settle, Ohio Casualty recognized that a jury might conclude that Turner had every intention to misappropriate the trust funds when he appeared at the Bank and presented the Notice of Removal and the Corporate Resolution appointing himself as the Successor Trustee. If this is what the jury might believe, Ohio Casualty's Banker's Blanket Bond would come into play. This is why Ohio Casualty decided enough was enough. It was time to settle. And so it did.

and to the bank's right to contribution from Livingston, Virginia Surety and A.G. Edwards. Plaintiffs covenant not to sue the bank. Plaintiffs and the bank "make no warranties or representations as to the substantive or procedural viability or merits" of the rights assigned or that they are subject to subrogation.

## III.  AGENT'S LIABILITY TO PERSONS OTHER THAN PRINCIPAL

The trial court concluded that plaintiffs Krawczyk and Glenview lacked standing to sue Livingston for either breach of fiduciary duty or negligence. The court ruled that as the bank's agent, Livingston owed a fiduciary duty only to the bank. On the negligence claim, the trial court reasoned that because Livingston performed his duties as a trust officer within the scope of his employment with the bank, he owed no duty of care to the plaintiffs. Whether the bank owed a fiduciary duty as trustee would be determined at trial because of factual disputes as to the nature of the trustee agreements.[6]

Plaintiffs Krawczyk and Glenview do not dispute the trial court's conclusion that they cannot maintain an action for breach of fiduciary duty against Livingston. They argue the trial court erred when it ruled they could not state a claim against Livingston for negligence.

The court relied upon RESTATEMENT (SECOND) OF AGENCY §§ 352 and 357 (1958). RESTATEMENT (SECOND) OF AGENCY § 352 provides:

> An agent is not liable for harm to a person other than his principal because of his failure adequately to perform his duties to his principal, unless physi-

[6] *See supra* note 2.

cal harm results from reliance upon performance of the duties by the agent, or unless the agent has taken control of land or other tangible things.

RESTATEMENT (SECOND) OF AGENCY § 357 provides, "An agent who intentionally or negligently fails to perform duties to his principal is not thereby liable to a person whose economic interests are thereby harmed."

Plaintiffs assert that although RESTATEMENT (SECOND) OF AGENCY § 357 correctly states the law as to an agent's liability to a third party for the agent's breach of his duty to his principal, RESTATEMENT (SECOND) OF AGENCY §§ 343 and 350 compel a different conclusion regarding an agent's tortious conduct as to others. RESTATEMENT (SECOND) OF AGENCY § 343 provides:

> An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal, except where he is exercising a privilege of the principal, or a privilege held by him for the protection of the principal's interests, or where the principal owes no duty or less than the normal duty of care to the person harmed.

RESTATEMENT (SECOND) OF AGENCY § 350 provides, "An agent is subject to liability if, by his acts, he creates an unreasonable risk of harm to the interests of others protected against negligent invasion."

Moreover, plaintiffs assert that Wisconsin has a broader concept of duty than that described in RESTATEMENT (SECOND) OF AGENCY §§ 352 and 357. Under Wisconsin case law:

> The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed

interest is unknown at the time of the act. This is the view of the minority in *Palsgraf v. Long Island R.R. Co.* (1928), 248 N.Y. 339, 162 N.E. 99. . . .

. . . .

A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones. In addition, he is liable to unforeseeable plaintiffs.

*A.E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 483-84, 214 N.W.2d 764, 766 (1974).

The Wisconsin appellate courts have cited and approved RESTATEMENT (SECOND) OF AGENCY § 343. *See, e.g., Ford v. Wisconsin Real Estate Examining Bd.*, 48 Wis. 2d 91, 102, 179 N.W.2d 786, 792 (1970), *cert denied*, 401 U.S. 993 (1971); *Purtell v. Tehan*, 29 Wis. 2d 631, 639, 139 N.W.2d 655, 659 (1966); *Grube v. Daun*, 173 Wis. 2d 30, 51, 496 N.W.2d 106, 113 (Ct. App. 1992). Our supreme court cited and approved RESTATEMENT (SECOND) OF AGENCY § 350 in *Bruss v. Milwaukee Sporting Goods Co.*, 34 Wis. 2d 688, 697, 150 N.W.2d 337, 341 (1967).

However, when determining an agent's liability to persons other than his principal the Wisconsin Supreme Court in *Greenberg v. Stewart Title Guaranty Co.*, 171 Wis. 2d 485, 492 N.W.2d 147 (1992), employed an analysis different from that in *A.E. Investment Corp.*, 62 Wis. 2d at 483-84, 214 N.W.2d at 766, and RESTATEMENT (SECOND) OF AGENCY §§ 343 and 350. Plaintiff Greenberg purchased real estate title insurance from Stewart Title. Southeastern Title Company had searched the title as Stewart's agent, but failed to discover title defects. Greenberg claimed the title was

unmerchantable and sued Stewart and Southeastern for their negligence. The *Greenberg* court held that a title insurer such as Stewart is not liable in negligence for a defect in title, unless the insurer had assumed the duty to conduct a reasonable search in addition to contracting to insure title. Because Stewart had not assumed that duty, Stewart was not liable in negligence to Greenberg. *Id.* at 496, 492 N.W.2d at 152.

Greenberg contended that even if Stewart owed him no duty to make a reasonable title search, Stewart's agent, Southeastern, was liable to him for its negligence since Southeastern was not a party to the insurance contract between Greenberg and Stewart. The *Greenberg* court held, "In the present case, Southeastern, the agent, performed its services solely for the benefit of [Stewart] and owed no duty to Greenberg. Thus, no action in tort may be brought against Southeastern." *Id.* at 498, 492 N.W.2d at 153.

■

In *Greenberg*, the plaintiff's damages were purely economic, but it is immaterial that an agent's negligence causes only economic damage to a third person. In Wisconsin, a negligent actor is liable for economic harm. *See A.E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d at 490-91, 214 N.W.2d at 770 (complaint stated claim for economic loss against architect who designed building for a contractor and knew plaintiffs would operate business in the building when plaintiff alleged design failure); *Citizens State Bank v. Timm, Schmidt and Co., S.C.*, 113 Wis. 2d 376, 335 N.W.2d 361 (1983) (lender stated claim for lender's loss against accountants for having negligently prepared financial statement for their client on which lender relied); *Hap's Aerial Enterprises, Inc. v. General Aviation Corp.*, 173 Wis. 2d 459, 496 N.W.2d 680 (Ct. App. 1992)

(aircraft buyer stated claim for economic loss caused by defendant's negligent inspection performed for the prior owner).

■■■■

When the pertinent supreme court precedents appear to lead to different results, we follow that court's last pronouncement. *Spacesaver Corp. v. DOR*, 140 Wis. 2d 498, 502, 410 N.W.2d 646, 648 (Ct. App. 1987). We hold, on the basis of *Greenberg*, 171 Wis. 2d at 498, 492 N.W.2d at 153, that Livingston, as a negligent agent, is not liable for economic losses he caused to persons other than his principal, the bank.

## IV.   SUBSTITUTION

We conclude the trial court should have granted Ohio Casualty's motion to substitute to the interest of the bank in the action.[7] Our disposition of the claims of Krawczyk and Glenview against Livingston moots the assignment issue as to those plaintiffs. Because Krawczyk and Glenview have no claim against Livingston for his negligence, Ohio Casualty acquired nothing by the assignment from those plaintiffs.

Livingston and Virginia Surety rely on *First National Bank v. Hansen*, 84 Wis. 2d 422, 267 N.W.2d 367 (1978), as did the trial court. The *Hansen* court held that a fidelity bond insurer which makes good a bank's losses arising out of a bank employee's fraudulent and dishonest acts is not subrogated to the bank's right to sue its directors for their negligence in failing to prevent those losses. *Id.* at 428-33, 267 N.W.2d at 370-72.

---

[7] "[T]he interest of the bank" in the action is Ohio Casualty's terminology. So far, neither the bank nor Ohio Casualty has sought relief from Livingston, but nobody raises the point.

In *Hansen*, bonding companies had issued fidelity bank bonds insuring a bank against losses resulting from the dishonest acts of its employees. The bank sued the bonding companies on the bonds for losses caused by the dishonest acts of the bank's vice-president. Claiming they were subrogated to the bank's claims against its officers and directors, the bonding companies impleaded the officers and directors on grounds that their negligence had permitted the defalcations to occur. The court affirmed a summary judgment dismissing the third-party complaint against the officers and directors.

The *Hansen* court noted that no court had previously considered whether a subrogation action can be brought against the officers and directors of an insured employer "for negligently permitting the default" by an employee or other officer. *Id.* at 430, 267 N.W.2d at 371 (footnote omitted). The court held that the equitable nature of subrogation does not permit the insurer to exercise its right of subrogation against its own insured, and the same principles apply when the insurer attempts to exercise its right of subrogation against its insured's negligent officer or director. *Id.* at 430-31, 267 N.W.2d at 371. The court said:

> In this case the negligence of the Bank . . . is but the negligence of its officers and directors whose duty is to supervise the operations of the bank. Since the bonding companies have no claim based on negligence against the Bank, we hold that equity will not permit the fidelity insurer to avoid that result by suing the officers and directors individually.

*Id.* at 432, 267 N.W.2d at 372.

The *Hansen* holding is limited to whether a subrogation action lies against a bank's officers and directors

568

for "negligently permitting" an employee or other officer to "default" in his duty to the bank. Neither its holding nor its reasoning protects the "defaulting" employee/officer—in this case Livingston—from a claim by an insurer on an assignment by the employer of its rights against the employee to the insurer.

The *Hansen* court recognized that "[u]pon payment of the loss caused by the wrongful acts of a bonded employee, a fidelity insurer becomes subrogated to any right of action the employer may have against the defaulting employee." *Id.* at 429, 267 N.W.2d at 370. Although no claim is made that Livingston acted dishonestly, his alleged negligence was a substantial cause of the bank's loss, and in that sense his position is comparable to that of the "defaulting" employee referred to by the *Hansen* court.

The merits of the claim Ohio Casualty acquired by assignment from the bank are not before us.

## V.   CONCLUSION

We conclude that the order dismissing Krawczyk's and Glenview's claims must be affirmed and the order denying Ohio Casualty's motion to substitute for the plaintiffs and the bank must be reversed.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded for further proceedings.